NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLOS CAJEIRA AND CRISTINA CAJEIRA,<br><br>                    Plaintiffs,<br><br>         v.<br><br>SKRUNDA NAVIGATION, C/O LSC, SIA LSC SHIP MANAGEMENT, LATVIAN SHIPPING COMPANY (LASCO) AND THE PILTENE, its engines, boilers, tackle and appurtenances, etc. *in rem*<br><br>                    Defendants. | Civil Action No. 09-cv-4905 (SDW)<br><br><br>**OPINION**<br><br><br><br>October 26, 2011 |

**WIGENTON**, District Judge.

Before this Court is Defendants' Skrunda Navigation, C/O LSC, SIA LSC Ship Management, Latvian Shipping Company (LASCO) and The M/T PILTENE, its engines, boilers, tackle and appurtenances, etc. *in rem* ("Defendants") Motion for Summary Judgment pursuant to Federal Civil Rule of Procedure 56. Plaintiffs Carlos Cajeira and Cristina Cajeira ("Plaintiffs") oppose this motion. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **GRANTS** Defendants' motion.

I. **BACKGROUND**

Carlos Cajeira ("Cajeira") is a longshoreman employed by Kinder Morgan Inc. ("KMI"), a marine terminal operator in Carteret, New Jersey. On April 13, 2009, while assisting with the release of Defendants' tank ship M/V PILTENE ("PILTENE"), Cajeira sustained injuries, which are the subject of this suit. Cajeira seeks to recover damages under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 905(b), and Defendants now move for summary judgment. The issue before this Court is whether Defendants breached a duty of care under § 905(b) of the LHWCA.

II. **FACTS**

On April 13, 2009, Cajeira was working the graveyard shift (10pm to 6am) on a dock owned by KMI. (Defs.' Rule 56.1 Statement ¶¶ 2, 3.) Cajeira was working as "ship-crew" also known as "hose crew" with two other KMI employees, Bruce Southard ("Southard"), who is a dockman, and Matthew Porto ("Porto"), who also works as "ship-crew". (*See id.* ¶ 5.) Leading up to the accident, the PILTENE, which was a tank ship owned by Defendants, used four hoses to discharge a cargo of petroleum at KMI's dock; the hoses belonged to KMI and were each 10" in diameter. (*See* Defs.' Br. 7.; Pl.'s Br. 2.) While KMI was responsible for disconnecting the PILTENE, KMI's shore crane was not working. (*See* Defs.' Rule 56.1 Statement ¶ 7.) As a result the PILTENE's crane had to be used to return the hoses to the dock. (*See id.* at ¶ 8.) After the petroleum was fully discharged from the vessel, the hoses were disconnected and the PILTENE's crane was used to lower the hoses onto the dock so that Cajeira and his coworkers could stow them away. (*See* Pl.'s Br. 1-2.) While the crane maneuvered the hoses away from the ship and onto the dock, Cajeira and his coworkers used their bodies to maneuver the hoses back into place, which was a routine job. (*See id.* at 1.) The crane was being operated by Bosun

2

Joseph Parfens ("Parfens"), with the help of Seaman Armands Graudins ("Graudins"), who was relaying signals that were ordered by KMI's hose crew on the dock; both Parfens and Graudins were Defendants' employees. (*See* Defs.' Rule 56.1 Statement ¶ 9; Defs.' Br. 7.) During the lowering of the fourth hose, Cajeira was four to five feet away from the edge of the pier and was working on stowing the hose by pushing it while Porto was pulling it. (*See* Defs.' Br., Ex. B at 241-43.) At this point, Cajeira and his coworkers were shouting up commands and using hand signals to direct the crane operator to swing the hose when Cajeira suddenly fell off the dock and into the water. (*See id.* at 252-56.) Although Cajeira claims that an unexpected movement by the hose caused his accident, he does not know what caused the hose to move and allegedly knock him into the water. (*See* Defs.' Rule 56.1 Statement ¶¶ 24, 25.) The KMI hose crew did not know what hand signals were being ordered or who on the dock was giving the orders. (*See id.* ¶¶ 33.) Furthermore, there were no reports of any signaling problems between Defendants' employees and KMI's hose crew on the dock, (*See id.* ¶¶ 12, 28); no reported problems with the crew of the PILTENE, (*See id.* ¶ 26.); and no evidence that the crane malfunctioned, (*See id.* ¶ 32.)[1]

III.  **LEGAL STANDARD**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson*

---

[1] New Jersey Local Civil Rule 56.1 requires the moving party on a motion for summary judgment to furnish a statement of material facts not in dispute, and the nonmoving party to furnish "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement." L. Civ. R. 56.1(a). "[A]ny material fact not disputed shall be deemed undisputed for the purposes of the summary judgment motion." *Id*. Because Plaintiffs failed to furnish, with its opposition papers, a responsive statement of material facts in accordance with L. Civ. R. 56.1(a), the Court deems all properly supported facts in Defendants' statement to be undisputed for the purposes of this motion. *See Handron v. Sebelius,* 669 F. Supp. 2d 490, 492 (D.N.J. 2009).

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact.  *Anderson*, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in "a light most favorable" to the nonmoving party.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 521 (1991).  The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325).  If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 323.

IV. **DISCUSSION**

Section 905(b) of the LHWCA preserved the longstanding right of longshoremen to pursue negligence claims against vessels.[2]  "A vessel may be liable to a longshore worker only when the vessel, whether acting jointly with the stevedore or individually, breached a duty it owed the injured worker."  *Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532,

---

[2] Section 905(b) provides in pertinent part: "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party . . . ." 33 U.S.C. § 905(b).

4

540 (3d Cir. 1994). The Supreme Court in *Scindia Steam Navigation v. De Los Santos*, 451 U.S. 156 (1981) outlined three general duties that vessel owners owe longshoremen: (1) the turnover duty, (2) the active operations duty, and (3) the duty to intervene. *See Scindia*, 451 U.S. at 167-178; *see also Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 98 (1994). Concerning the turnover duty, "[t]he shipowner . . . has a duty with respect to the condition of the ship's gear, equipment, tools, and work space to be used in the stevedoring operations." *Scindia Steam Navigation*, 451 U.S. at 157. Regarding the active operations duty, vessel owners must "exercise reasonable care to prevent injuries to longshoremen" in areas of the ship over which the vessel remains in active control after stevedoring operations have begun. *Id.* Finally, regarding the duty to intervene, vessel owners are required to intervene and correct any dangerous conditions that arise during stevedoring operations. *See id.* In the instant matter, the only duty at issue is the active operations (or active control) duty.

    a. **Active Operations Duty**

In order for the active operations duty to apply, "the vessel must have substantially controlled or been in charge [(i.e. exercised active control)] of (i) the area in which the hazard existed, (ii) the instrumentality which caused the injury, or (iii) the specific activities the stevedore undertook." *Davis*, 16 F.3d at 540. Active control by the vessel can be found either when "it never turned exclusive control of the area over to the stevedore but retained substantial control, or because the vessel substantially interfered, by invitation or otherwise, with the stevedore's exercise of exclusive control, such as by actively intervening in the area." *Id.* at 541. Once active control is established, a plaintiff must make a prima facie showing that the active operations duty was breached. To establish a prima facie claim for violation of the active operations duty, a plaintiff must show:

5

> (1) that the vessel appreciated, should have appreciated, or with the exercise of reasonable care would have appreciated, the condition; (2) that the vessel knew, or should have known, that the condition posed an unreasonable risk of harm to a longshore worker; (3) that a longshore worker foreseeably might fail to (i) either discover the condition or apprehend the gravity and probability of harm, or (ii) protect himself or herself against the danger; and (4) that the vessel failed to take reasonable precautionary or remedial steps to prevent or eliminate the dangerous condition.

*Id.* at 541.  Here, Plaintiffs argue that Defendants violated the active operations duty by negligently operating the vessel's crane, causing the hose/line to jerk.  Defendants, however, argue that Plaintiffs' claim is a false start because Plaintiffs cannot establish that the active operations duty was even triggered.

Defendants contend that while they may have been in physical control of the crane's movement, Cajeira and the hose crew, by directing the crane, were in operational control of the crane. (Defs.' Br. 23.)  Defendants point to testimony by Cajeira and his coworkers as evidence that they controlled the movement of the ship's crane. (*See* Defs.' Ex. B at 195-197) (Cajeira stating that he directed the sequence of laying the hoses down on the dock); (*see also* Defs.' Ex. B at 252-254)(Cajeira stating that he was commanding the crane regarding stowing the hoses on the dock); (*see also* Defs.' Ex. D at 152-53) (Porto stating that the PILTENE crew was taking orders from either Cajeira or Southard).  Plaintiffs' only proffered evidence that Defendants exercised active control is that Parfens was solely responsible for operating the crane on the night of the accident.  However, as Defendants highlight, Plaintiffs do not present any evidence that Parfens acted negligently in carrying out his duties or executed any orders contrary to those given to him from KMI's crew.  Plaintiffs' argument that Defendants actively controlled the crane because Parfens maneuvered it is a conclusory allegation that is insufficient for purposes of satisfying their burden.  In construing the facts in "a light most favorable" to the Plaintiffs, the facts presented indicate that Defendants did not retain substantial control over the crane as

6

Cajeira and his coworkers were commanding the crane's movements. *See Masson*, 501 U.S. at 521. Therefore, Defendants have met their burden of showing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law, and Plaintiffs have failed to make a sufficient showing otherwise.

## V.     CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED**.

s/Susan D. Wigenton, U.S.D.J.

Orig:   Clerk
Cc:     Madeline Cox Arleo, U.S.M.J.
        Parties